# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBIN KELLY, | CASE NO. 09-CV-2163 - IEG (NLS) |
| Plaintiff, | ORDER: |
| vs. | (1) DENYING PLAINTIFF'S AMENDED MOTION FOR SUMMARY JUDGMENT [Doc. No. 18]; and |
| MICHAEL J. ASTRUE, Commissioner of Social Security Administration, | (2) GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT [Doc. No. 20]. |
| Defendant. | |

Currently before the Court are Plaintiff's Amended Motion for Summary Judgment and Defendant's Cross-Motion for Summary Judgment. Having considered the parties' arguments, the Court **DENIES** Plaintiff's motion and **GRANTS** Defendant's cross-motion.

## BACKGROUND

Plaintiff is a 44-year-old female with at least a high school education. (Administrative Record ("AR") at 37.) Plaintiff's past relevant work was as a hairstylist, teacher's aide, store clerk, home attendant, mail clerk, and wall cleaner. (Id.) In the present application for disability benefits, Plaintiff alleges an amended onset date of April 23, 2004. (Id. at 22.) Administrative Law Judge ("ALJ") Bernard A. Trembly previously denied Plaintiff's application for disability benefits for an earlier period. (Id.) That unfavorable decision was issued on April 22, 2004. (Id.)

On July 19, 2004, Plaintiff protectively filed the current application for a period of disability and disability insurance benefits under Title II and for supplemental security income payments under Title XVI of the Social Security Act. (Id.) The claim was denied initially on October 29, 2004, and upon reconsideration on March 14, 2005. (Id.) Thereafter, Plaintiff filed an untimely request for a hearing on July 5, 2005, which was denied on September 5, 2006. (Id.) Plaintiff sought review of the dismissal of her request for a hearing. (Id.) By order dated March 29, 2007, the Appeals Council vacated the order of dismissal based on a finding that Plaintiff had good cause for the late filing. (Id.) Upon remand, the hearing was held before ALJ David L. Wurzel on September 24, 2008. (Id.) Plaintiff appeared represented by counsel and testified at the hearing. (Id.) Testimony was also taken from Alfred G. Jonas, M.D., a medical expert board-certified in psychiatry, and Katie Macy-Powers, a vocational expert. (Id.) The ALJ issued a written decision in this case on January 9, 2009.

In his decision, the ALJ first noted that pursuant to the rule in Chavez v. Bowen, 844 F.2d 691 (9th Cir. 1988), the prior functional limitations found by ALJ Trembly on April 22, 2004 continued after that date and Plaintiff could overcome them only with proof of changed circumstances showing a greater degree of disability. (Id. at 23.) The ALJ then proceeded to apply the five-step sequential evaluation process established by the Social Security Administration. The ALJ found Plaintiff not disabled at step five of the sequential evaluation from her amended onset date of April 23, 2004, through March 31, 2006, because there were jobs that existed in significant numbers in the national economy that Plaintiff could perform and sustain on a regular and continuing basis. (Id. at 23.) The ALJ further found Plaintiff not disabled at step one from April 1, 2006, through February 29, 2006, during all of which she worked at the level of substantial gainful activity. (Id.) Finally, the ALJ found Plaintiff disabled at step three from March 1, 2008, through the date of the decision. (Id.) Specifically, the ALJ made the following pertinent findings:

> 2.  The claimant engaged in substantial gainful activity from April 1, 2006, through February 29, 2008.
>
> . . . .
>
> 3.  The claimant did not engage in substantial gainful activity from April 23, 2004, through March 31, 2006; or from March 1, 2008, through the date of this decision.
>
> 4.  Since the alleged onset date of disability, the claimant had the following

medically determinable impairments that in combination are considered "severe" under the Social Security Act and regulations: Obesity (62 inches, 185 pounds, BMI 33); headaches; psychotic disorder, NOS, versus drug-induced psychosis; and methamphetamine dependence, in full sustained remission since July 2005 by report.

. . . .

5.   From April 23, 2004, through March 31, 2006, both with and without drug addiction and alcoholism (DA&A) included in the assessment, the claimant did not have any impairment or combination of impairments that met or medically equaled any impairment listed in 20 CFR Part 404, Subpart P, Appendix I.

. . . .

6.   From April 23, 2004 through March 31, 2006, both with and without drug addiction and alcoholism (DA&A) included in the assessment, the claimant retained the residual functional capacity to perform work activity at the light exertional level, lifting and carrying 10 pounds frequently, and 20 pounds occasionally, and sitting, standing and walking for six hours each per eight-hour workday; with the following nonexertional limitations: never climbing ladders, ropes or scaffolds; never balancing; occasionally climbing ramps and stairs; occasionally stooping and crouching; occasionally kneeling and crawling; avoiding concentrated exposure to extreme heat; and mentally limited to unskilled work with no close or frequent interpersonal contact with supervisors, co-workers, or the public.

. . . .

7.   From April 23, 2004, to March 31, 2006, the claimant was unable to perform her past relevant work.

. . . .

10.   The claimant has a skilled work background, but has no skills or semi-skills transferable to other work within the limitations of her residual functional capacity.

. . . .

11.   From April 23, 2004, through March 31, 2006, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could perform and sustain on a regular and continuing basis.

. . . .

12.   From March 1, 2008, through the date of this decision, both with and without drug addiction and alcoholism (DA&A) included in the assessment, the severity of the claimant's psychotic disorder has medically met the requirements of section 12.03 of Appendix I, Subpart P, Regulations No. 4.

. . . .

13.   The claimant was not disabled prior to March 1, 2008, but became disabled on that date and has continued to be disabled through the date of this decision.

14.   The claimant's substance use disorder is not a contributing factor material to the determination of disability since March 1, 2008.

(Id. at 26-39 (internal citations omitted).) Plaintiff subsequently requested a review of the hearing decision by the Appeals Council. The Appeals Council denied the request, making the ALJ's decision the final decision in this matter. (Id. at 8-10.)

Plaintiff commenced this action on October 1, 2009, seeking judicial review pursuant to 42 U.S.C. § 405(g). [Doc. No. 1]. Plaintiff subsequently filed the present Amended Motion for Summary Judgment, and Defendant filed a Cross-Motion for Summary Judgment. [Doc. Nos. 18, 20].

## LEGAL STANDARD

To qualify for disability benefits under the Social Security Act, the claimant must show "inability to engage in any substantial gainful activity by reason of any medically determinable impairment that can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Secretary of the Social Security Administration established a five-step sequential evaluation for determining whether a person is disabled. See 20 C.F.R. § 404.1520. The burden of proof is on the claimant as to steps one through four. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). As to step five, the burden shifts to the Commissioner. Id. "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." Id.; 20 C.F.R. § 404.1520. The five steps are:

> Step 1. Is the claimant presently working in a substantially gainful activity? If so, then the claimant is "not disabled" within the meaning of the Social Security Act and is not entitled to disability insurance benefits. If the claimant is not working in a substantially gainful activity, then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two.
>
> Step 2. Is the claimant's impairment severe? If not, then the claimant is "not disabled" and is not entitled to disability insurance benefits. If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three.
>
> Step 3. Does the impairment "meet or equal" one of a list of specific impairments described in the regulations? If so, the claimant is "disabled" and therefore entitled to disability insurance benefits. If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four.
>
> Step 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is "not disabled" and is not entitled to disability insurance benefits. If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step.
>
> Step 5. Is the claimant able to do any other work? If not, then the claimant is "disabled" and therefore entitled to disability insurance benefits. If the claimant is able

> to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do. There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert, or (2) by reference to the Medical-Vocational Guidelines. If the Commissioner meets this burden, the claimant is "not disabled" and therefore not entitled to disability insurance benefits. If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to disability benefits.

Tackett, 180 F.3d at 1098-99 (internal citations and footnotes omitted).

A reviewing court can evaluate an agency's decision only on the grounds articulated by the agency. Ceguerra v. Sec'y of Health & Human Servs., 933 F.2d 735, 738 (9th Cir. 1991). At the same time, the Commissioner's denial of disability benefits may be set aside only if the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Id. at 1097. "Substantial evidence" is defined as "'more than a mere scintilla but less than a preponderance.'" Id. at 1098 (citation omitted). In determining whether there exists substantial evidence to support the ALJ's finding, the court must weigh both the evidence that supports and the evidence that detracts from the ALJ's conclusion. Id. "'If the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ.'" Id. (citation omitted).

## DISCUSSION

**I.   The ALJ properly applied the rule in *Chavez v. Bowen***

Plaintiff argues the ALJ in this case improperly found a presumption of nondisability as a result of the prior unfavorable decision by ALJ Trembly on April 22, 2004. In Chavez v. Bowen, the Ninth Circuit concluded that once there is a final administrative decision finding a claimant not to be disabled, a "presumption of continuing nondisability" arises that can later be overcome only with a showing of "changed circumstances" indicating a greater disability. 844 F.2d at 693. The same presumption applies to the first ALJ's findings concerning the claimant's residual functional capacity, education, and work experience. Id. at 694. In this case, ALJ Trembly previously found that Plaintiff was not disabled and that her severe mental impairments still allowed her to perform "low stress" and "simple, repetitive" work. (AR at 63, 66.) Applying the Chavez presumption, the current ALJ properly presumed that *those limitations* continued after April 22, 2004, and until March 31, 2006, at which

1 time Plaintiff began working as a home attendant at the All Valley Home Health Care.[1] (See id. at 23.)

2 Most importantly, there is no indication the ALJ in this case ever presumed that Plaintiff
3 *continued to not be disabled* after April 22, 2004. Rather, the ALJ only presumed the continued
4 validity of Plaintiff's previously determined mental residual functional capacity, and then carefully
5 conducted the required five-step analysis for each of the three relevant periods to ultimately conclude
6 that Plaintiff was not disabled prior to March 1, 2008. (See generally id. at 23-24, 26-39.) As
7 discussed in more detail below, that determination is supported by substantial evidence. Accordingly,
8 the ALJ did not commit a legal error in partially relying on the Chavez presumption.

9 **II.     The ALJ properly evaluated the medical opinion testimony**

10 Plaintiff alleges the ALJ erred in rejecting the treating physician's opinion without making
11 appropriate findings. Typically, the medical opinion of the claimant's treating physician is entitled to
12 "special weight" because "'he is employed to cure and has a greater opportunity to know and observe
13 the patient as an individual.'" Rodriguez v. Bowen, 876 F.2d 759, 761 (9th Cir. 1989) (citation
14 omitted). However, that opinion need not be given controlling weight, nor is it necessarily conclusive
15 as to the existence of an impairment or the ultimate issue of disability. Batson v. Comm'r of Soc. Sec.
16 Admin., 359 F.3d 1190, 1194-95 (9th Cir. 2004). An ALJ may disregard a treating physician's opinion
17 whether or not that opinion is contradicted. Id. at 1195. To reject an uncontroverted opinion of the
18 claimant's treating physician, the ALJ must present "clear and convincing reasons" for doing so.
19 Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citations omitted). To reject the opinion of
20 a treating physician which conflicts with that of an examining physician, the ALJ must "make findings
21 setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the
22 record." Id. (citations and internal quotation marks omitted). "'The ALJ can meet this burden by
23 setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his
24 interpretation thereof, and making findings.'" Id. (citation omitted).

25 In the present case, Plaintiff's treating psychiatrist, Dr. Douglas Dolnak, opined on multiple
26 "checklist" forms that Plaintiff was "markedly" limited in almost all mental work related categories,

27

28 [1] However, because ALJ Trembly never defined the terms "low stress" and "simple repetitive tasks," the current ALJ found that to be equivalent to "unskilled work with no close or frequent interpersonal contact with supervisors, co-workers, or the public." (AR at 23.)

1 had "poor" mental functioning, and was unable to complete a normal workday. (See AR at 818-28.)
2 Dr. Dolnak also answered "no" to whether Plaintiff was "presently addicted to alcohol and/or drugs."
3 (Id. at 828.) There was substantial evidence in the record for the ALJ to be skeptical when reviewing
4 these "assessments." First, as the ALJ noted, at the very time that Dr. Dolnak opined that Plaintiff was
5 unable to complete a normal workday, Plaintiff *was*, in fact, working at the level of substantial gainful
6 activity in semi-skilled work as a home attendant for the All Valley Home Health Care. (See id. at
7 423-34.) For example, the records from the fourth quarter of 2007 reflect that Plaintiff was earning
8 well over $1,000 per month at that time. (See id. at 434.) Similarly, the ALJ found not credible Dr.
9 Dolnak's assessment that Plaintiff was not addicted to alcohol and/or drugs, when the objective
10 evidence in the record indicated a long-term addiction to methamphetamine. (See id. at 31.) For
11 example, Plaintiff was acutely intoxicated on methamphetamine on admission to psychiatric hospital
12 in July 2005, where she admitted her 10-year addiction and recent abuse of methamphetamine during
13 the six months prior to admission. (See id. at 644-45, 651, 693.) Finally, Dr. Dolnak's assessments
14 of Plaintiff were contradicted by opinions of Dr. Becraft and Dr. Amado, examining physicians, who
15 found only "mild" to "moderate" functional limitations. (See id. at 621-30.)

16 Accordingly, because Dr. Dolnak's assessments prior to March 1, 2008 were contradicted by
17 objective evidence in the record and because the ALJ specified "specific, legitimate reasons" for
18 rejecting them, substantial evidence supports the ALJ's decision not to rely on those assessments. See
19 Magallanes, 881 F.2d at 751; see also Batson, 359 F.3d at 1195 (concluding the ALJ properly
20 discounted the opinions of the claimant's treating physicians where those opinions were in the form
21 of checklists, did not have supportive objective evidence, and were contradicted by other evidence in
22 the record); Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 602 (9th Cir. 1999) ("But we have
23 consistently upheld the Commissioner's rejection of the opinion of a treating or examining physician,
24 based in part on the testimony of a nontreating, nonexamining medical advisor." (citations omitted));
25 Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996) ("We have held that the findings of a nontreating,
26 nonexamining physician can amount to substantial evidence, so long as other evidence in the record
27 supports those findings." (citations omitted)). The ALJ, however, did not reject all of Dr. Dolnak's
28 opinions. On the contrary, because Dr. Dolnak's assessments of Plaintiff for the period after March
1, 2008, were supported by objective evidence, the ALJ properly relied on those assessments.

**III.     The ALJ properly evaluated the lay witnesses' statements**

Plaintiff also argues the ALJ erred in failing to give specific and germane reasons for rejecting third party statements within the record. When evaluating a claim for disability benefits, evidence from acceptable *medical* sources must be used "to establish whether [the claimant has] a medically determinable impairment." 20 C.F.R. § 416.913(a). The ALJ, however, may also consider evidence from other *non-medical* sources "to show the severity of [the claimant's] impairment(s) and how it affects [his or her] ability to work." Id. § 416.913(d). These "other sources" include spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, and clergy. Id. § 416.913(d)(4). In order to reject a third party statement, the ALJ must give reasons "germane" to that witness. Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) (citation omitted).

A.     Statements of Addison Kelly

Plaintiff first alleges the ALJ erred in rejecting the statements made by Plaintiff's sister, Addison Kelly. Ms. Kelly wrote that Plaintiff used to be always depressed *during her younger years* and would lock herself in her room for several hours at a time with no apparent reason. (AR at 522.) The ALJ properly discounted this testimony to the extent it referred to a time period long before the alleged disability period. (See id. at 35.) Moreover, to the extent Ms. Kelly meant that Plaintiff was still isolating herself in September 2008, there is no indication the ALJ rejected that statement, and indeed it is consistent with the ALJ's finding of disability after March 1, 2008.

B.     Statements of Roylene Perkins

Plaintiff next alleges the ALJ failed to reject the statements made by Plaintiff's patient, Roylene Perkins, with germane reasons, and therefore those statements provide substantial evidence to support Plaintiff's testimony and Dr. Dolnak's opinion. Ms. Perkins, for whom Plaintiff cared through the All Valley Home Health Care, wrote that Plaintiff "was very good most of the time." (Id. at 523.) She also noted that Plaintiff had "some mood swings" and that Plaintiff also "some times slept some" and "did get vocal some times." (Id.) There is no indication, however, the ALJ rejected any of these statements. (See id. at 35.) Rather, these statements are consistent with the ALJ finding that Plaintiff was not disabled between April 1, 2006 and February 29, 2009, when she was able to maintain substantial gainful employment at the All Valley Home Health Care. (See id.)

///

1          C.     Statements of Shayne Raymond

2          Plaintiff also alleges the ALJ failed to reject the statements of Plaintiff's ex-boyfriend, Shayne
3 Raymond, with germane reasons. Mr. Raymond wrote that Plaintiff was emotionally unstable in 2005
4 and 2006, "often afraid to leave the house" and having "mood swings that would escalate out of
5 control." (Id. at 526.) Mr. Raymond also wrote that Plaintiff would "sleep for hours upon hours and
6 be very difficult to wake up." (Id.) Just as with the other witnesses, there is no indication the ALJ
7 rejected any of Mr. Raymond's statements. (See id. at 34-35.) Rather, the ALJ found them to be
8 consistent with his determination that Plaintiff was abusing methamphetamine during that time. (Id.)

9          D.     Statements of Louise Pearson

10         Plaintiff next alleges the ALJ improperly rejected the statements of Louise Pearson, who was
11 Plaintiff's daughter's teacher and caregiver. Ms. Pearson wrote how Plaintiff's daughter moved in
12 with her during senior year because of Plaintiff's "extreme mood swings" and the fact that Plaintiff
13 "would often take her frustration out on [her daughter] with both verbal and physical abuse." (Id. at
14 521.) Once again, however, there is no indication the ALJ rejected any of these statements. (See id. at
15 35.) Rather, the fact that Plaintiff was not a good parent during that time is consistent with the ALJ's
16 finding that Plaintiff was then abusing methamphetamine. (See id.)

17         E.     Statements of Leisah Hall

18         Finally, Plaintiff argues the ALJ improperly disregarded the statements of Plaintiff's employer,
19 Leisah Hall, which corroborated Plaintiff's inability to get to work on time and to show up for work
20 at all throughout her employment. There is, however, no indication the ALJ disregarded any of Ms.
21 Hall's statements. Rather, the ALJ accepted Ms. Hall's opinion that Plaintiff has been an "excellent
22 caregiver" for most of the time she worked at the All Valley Home Health Care and that her clients
23 really liked her. (See id. at 34, 502.) The ALJ also accepted Ms. Hall's statements that Plaintiff started
24 to decompensate emotionally towards the end of her job with the All Valley Home Health Care, which
25 manifested itself in a change of demeanor and tardiness due to excessive sleeping. (Id.) All of these
26 are consistent with the ALJ's ultimate conclusion that although Plaintiff was engaged in substantially
27 gainful employment in 2006 and 2007, and therefore was not disabled, her condition deteriorated
28 significantly by March 1, 2008, that she could no longer continue working. (See id. at 34.)

          Accordingly, the ALJ properly evaluated all of the lay witnesses' statements in this case.

### IV. The ALJ did not otherwise err

Lastly, Plaintiff alleges the ALJ's finding that Plaintiff was limited to "unskilled work with no close or frequent interpersonal contact with supervisors, coworkers and the public" is not supported by substantial evidence. However, as Plaintiff acknowledges, the State agency physicians opined that she would be limited to nonpublic simple repetitive tasks. (See id. at 621-28.) These limitations are consistent with other medically acceptable testimony in the record, (see, e.g., id. at 31-34, 613-31, 829-35, 934-55), as well as the lay testimony submitted (see, e.g., id. at 502-05, 521-23, 26). Accordingly, the ALJ's finding as to Plaintiff's residual functional capacity for the time period between April 23, 2004, and March 31, 2006, is supported by substantial evidence.

Moreover, even if a lesser functional capacity was possible for this period and Plaintiff was disabled for some time prior to March 1, 2008, the ALJ also found that Plaintiff's substance abuse would have been a contributing factor "material" to such disability. (Id. at 33-34.) As the ALJ correctly noted, a claimant is ineligible for disability benefits if her drug use is a contributing factor material to the determination of disability. See 42 U.S.C. § 423(d)(2)(C); 20 C.F.R. §§ 404.1535, 416.935. Accordingly, in light of Plaintiff's history of drug abuse during the relevant time, (see AR at 644-45, 651, 693), the ALJ did not err in finding Plaintiff ineligible for disability benefits from the onset date of April 23, 2004, through March 31, 2006.

Finally, the ALJ did not err in finding that Plaintiff was not entitled to disability benefits for the period between April 1, 2006, and February 29, 2008, because Plaintiff was at that time working at the All Valley Home Health Care. When a claimant performs substantial gainful activity, the adjudicator will find that she is not disabled "regardless of [the claimant's] medical condition or [her] age, education, and work experience." 20 C.F.R. § 404.1520(a)(4)(i), (b). Under the regulations, "work may be substantial even if it is done on a part-time basis," and it can be "gainful" if "it is the kind of work usually done for pay or profit, whether or not a profit is realized." Id. § 404.1572(a), (b). In general, if the claimant worked for substantial earnings, the adjudicator will find that she is able to do substantial gainful activity. Id. § 404.1574(a)(1). In this case, the ALJ found that Plaintiff began working for the All Valley Home Health Care as a home attendant in 2006, earning $11,361 in 2006, $18,194 in 2007, and $2,698 during the first two months of 2008. (AR at 26; see also id. at 428-29, 434.) The ALJ also found that those earnings far exceeded the presumptive dollar amounts for

1  substantial gainful activity during that time period. See Cost-of-Living Increase and Other
2  Determinations for 2006, 70 Fed. Reg. 61,677, 61,677 (Oct. 25, 2005); Cost-of-Living Increase and
3  Other Determinations for 2007, 71 Fed. Reg. 62,636, 62,636 (Oct. 26, 2006); Cost-of-Living Increase
4  and Other Determinations for 2008, 72 Fed. Reg. 60,703, 60,703 (Oct. 25, 2007). Accordingly,
5  because between April 1, 2006 and February 29, 2008, Plaintiff was earning more than specified in
6  the guidelines, the ALJ properly presumed that Plaintiff was engaged in substantial gainful
7  employment during that period, and therefore was not disabled under step 1 of the sequential analysis.
8  See Keyes v. Sullivan, 894 F.2d 1053, 1056 (9th Cir. 1990) ("[T[here is a presumption of substantial
9  gainful employment if the applicant earns over the amount specified in the guidelines."). Plaintiff has
10 failed to rebut that presumption. See id.

**CONCLUSION**

For the foregoing reasons, because the ALJ's ultimate conclusion is supported by substantial evidence and because the ALJ did not otherwise commit a legal error in applying the five-step sequential analysis, the Court hereby **GRANTS** Defendant's Cross-Motion for Summary Judgment and **DENIES** Plaintiff's Amended Motion for Summary Judgment.

**IT IS SO ORDERED.**

**DATED:  August 24, 2010**

**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**